UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GERALD JAMES CARTER,

        Plaintiff,

v.                                    Case No. 3:13-cv-1208-J-39JRK

J. D. MIARA, et al.,

        Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Gerald James Carter, an inmate of the Florida penal system, is proceeding in this action on a pro se Amended Civil Rights Complaint (Amended Complaint) (Doc. 22) filed pursuant to 42 U.S.C. § 1983.  Plaintiff names J. D. Miara, a correctional officer at Suwanee Correctional Institution (SCI), and J. R. Brannen, a correctional officer Captain (formerly Lieutenant), as the Defendants.[1]  Plaintiff asserts that Defendant Miara violated his Eighth Amendment right to be free from cruel and unusual punishment when he used unnecessary and excessive force on December 31, 2012.  Plaintiff also claims that Defendant Brannen violated his Eighth Amendment rights by failing to intervene to protect him from unnamed officers' excessive use of force on December 31, 2012.  As relief, Plaintiff seeks compensatory damages and an order enjoining

---

[1] The **Clerk** shall correct the docket to show that Defendant Brannen's name is J. R. Brannen, not J. M. Brannen.

Defendants from engaging in further violations of Plaintiff's constitutional rights.

This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. 40) (Defendants' Motion).[2]  Plaintiff was advised of the provisions of Federal Rule of Civil Procedure 56, notified that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and given an opportunity to respond.  See Summary Judgment Notice (Doc. 43).  Plaintiff responded.  See Plaintiff's Response for Summary Judgment (Doc. 53) (Plaintiff's Response).

## II. Plaintiff's Allegations in the Amended Complaint

In his verified Amended Complaint,[3] Plaintiff alleges that, on December 31, 2012, while he was confined at SCI-Annex, Defendant Miara handcuffed Plaintiff behind his back, and secured him with a waist chain, black box, handcuffs, and leg shackles.  Amended Complaint at 5.  Defendant Miara had Plaintiff sit on bent knees during this procedure.  Id.  Defendant Miara, Sergeant Goodwich,

_____

[2] The Court will refer to the exhibits appended to Defendants' Motion as "Ex."  The Court has reviewed Defendants' Exhibit K, the hand-held video filed under seal.  (Doc. S-51).

[3] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

and Officer J. Black escorted Plaintiff to the P-Dormitory hallway to see the nurse prior to Plaintiff's departure.  Id.  The nurse told Sergeant Goodwich that Plaintiff was clear for departure.  Id. at 6.  At this point, Defendant Miara instructed Plaintiff to back up, step into the Sally Port holding cell, and place his knees on the bench inside the cell.  Id.  Plaintiff complied with this directive.  Id.  Defendant Miara immediately and forcefully pulled Plaintiff down to the floor from the bench by the shackles.  Id.  Defendant Miara then kicked Plaintiff in the left side and repeatedly punched Plaintiff on the left side of his head and ear for no apparent reason, calling Plaintiff a derogatory name.  Id.  After a minute, Sergeant Goodwich and Officer Black were able to gain control of Defendant Miara.  Id.

Thereafter, Plaintiff was escorted by Captain Kenneth Butler to the SCI mental health Crisis Stabilization Unit (CSU).  Id.  Once he was placed and secured in a cell in H-Dormitory, Defendant Brannen approached Plaintiff and informed him that he needed to be seen by medical staff to document his injuries.  Id.  Plaintiff was handcuffed behind his back and escorted to medical.  Id.  Plaintiff was beaten and punched in an unprovoked attack by unnamed officers while Defendant Brannen watched without attempting to stop the officers.  Id.  The officers stopped beating Plaintiff when they saw blood pouring of Plaintiff's left ear.  Id.  Plaintiff has been unable to hear out of his left ear since the first beating.  Id.

3

### III. Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material and which are irrelevant. <u>Raney v. Vinson Guard Service, Inc.</u>, 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990). A <u>pro se</u> plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. <u>See</u> <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." <u>Ellis v. England</u>, 432 F.3d 1321, 1327 (11th Cir. 2005).
>
> As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91

4

>L.Ed.2d 202 (1986).  Unsupported, conclusory
>allegations that a plaintiff suffered a
>constitutionally cognizant injury are
>insufficient to withstand a motion for summary
>judgment.  <u>See</u> <u>Bennett v. Parker</u>, 898 F.2d
>1530, 1532-34 (11th Cir. 1990) (discounting
>inmate's claim as a conclusory allegation of
>serious injury that was unsupported by any
>physical evidence, medical records, or the
>corroborating testimony of witnesses).
>Moreover, "[w]hen opposing parties tell two
>different stories, one of which is blatantly
>contradicted by the record, so that no
>reasonable jury could believe it, a court
>should not adopt that version of the facts for
>purposes of ruling on a motion for summary
>judgment." <u>Scott v. Harris</u>, 550 U.S. 372,
>380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

<u>Howard v. Memnon</u>, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per

curiam) (footnote omitted).  In an action involving the alleged

violation of plaintiff's federal constitutional rights under 42

U.S.C. § 1983, "assuming all facts in the light most favorable to

[plaintiff, as the non-moving party]," summary judgment is properly

entered in favor of the defendant where "no genuine issue of

material fact exist[s] as to whether [plaintiff]'s constitutional

rights were violated." <u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905

(11th Cir. 2013) (per curiam).

## IV. Defendants' Motion

Defendants contend that they are entitled to summary judgment

because: (1) Plaintiff has failed to establish an Eighth Amendment

violation against Defendant Miara based on a claim of excessive use

of force; (2) Plaintiff has failed to establish an Eighth Amendment

violation against Defendant Brannen for failure to intervene; and

(3) Plaintiff is barred from recovering compensatory or punitive damages due to the lack of physical injury pursuant to 42 U.S.C. § 1997e(e).

Exhibits are appended to Defendants' Motion, including the Declaration of Officer Jeffrie Miara, in which he describes the pertinent events as follows:

> On December 31, 2012, while working at Suwannee Correctional Institution Annex, I observed inmate Gerald Carter, DC# G11093, in the P-Dormitory holding cell loudly complaining that his leg restraints were secured too tightly. I directed Carter to kneel on the metal bench inside the holding cell. Once Carter complied and kneeled on the bench, I entered the holding cell. While I attempted to check the leg restraints to ensure they were not too tight but still secure, Carter attempted to kick me.
>
> Due to Carter's attempted assault and his generally aggressive behavior, Officer Black and I applied force by placing Carter on the ground, chest-first. We held Carter there until he stopped being unruly and he began complying with our orders. Our actions that day were in accord with the training we have received and were conducted according to policy.
>
> The claim that I punched or kicked Carter is a complete lie. I did not witness Officer Black physically assault Carter in any manner, either. I am not sure why Carter made these allegations. However, I am positive that they are false. Officer Black and I used the minimal amount of force necessary to place Carter on the ground and hold him there until he calmed down and started listening to us.

Ex. B at 1 (paragraph enumeration omitted).

The Declaration of Sergeant J. R. Brannen is also appended to Defendants' Motion, and it contains the following, in pertinent part:

> On December 31, 2012, while working at Suwannee Correctional Institution, I responded to the scene of a spontaneous use of force involving Gerald Carter, DC# G11093.  The use of force occurred in the medical triage room of H-Dormitory.  When I arrived at the scene, inmate Carter was face-down on the floor and all force had ceased.  Everything from that point forward was documented on the post use of force handheld video.
>
> While I cannot recall where I was when I was called to the scene, at no point did I witness any force being applied to Carter.  Further, I had no idea the use of force even occurred until I was advised to report to the scene.  While I have not seen any evidence that excessive force was used against Carter, had I seen an altercation where I felt the force employed exceeded the necessary level or heard a commotion, I would have responded, intervened, and reported the incident.  I do not condone inmate abuse by any individual, officer or inmate.

Ex. C (paragraph enumeration omitted).

The Declaration of Officer James Black is also offered to support Defendants' Motion.  It states:

> On December 31, 2012, while working at Suwannee Correctional Institution Annex, I observed inmate Gerald Carter, DC# G11093, in the P-Dormitory holding cell loudly complaining that his leg restraints were secured too tightly.  I observed Miara direct Carter to kneel on the bench inside the holding cell.  After Miara entered the holding cell, while he attempted to check the leg restraints to ensure they were not too tight but still secure, Carter tried to kick Miara.

7

Due to Plaintiff's attempt to assault an officer and his generally combative and aggressive demeanor, Officer Miara and I used reactionary physical force in the form of placing Carter on the ground, chest-first. We held Carter there until his unruly behavior stopped and he began complying with our orders. Our actions that day were in accord with the training we have received and was conducted according to policy.

Neither I, nor Officer Miara, punched or kicked Carter. Had I observed Carter being physically assaulted in any way, I would have intervened and reported the incident to my supervisor. This incident was as routine as a reactionary use of force could be. I do not know why Carter concocted these allegations, but they could not be further from the truth.

Ex. D (paragraph enumeration omitted).

Defendants also offer the Declaration of Nurse Angela Bridges, a Licensed Practical Nurse, in support of their motion. She attests:

On December 31, 2012, while working at Suwannee Correctional Institution Annex, I conducted a post use of force examination on Gerald Carter, DC # G11093. During the examination, Carter complained of left shoulder and ear pain. Although I observed redness in Carter's ear canal, I could not do a full examination of his inner ear due to wax build-up. There were no visible signs of injury to his shoulder. Carter also had superficial lacerations on both ankles and swelling to the left cheek.

At no point did Mr. Carter state that he could not hear out of his left ear or that his ear was ringing. Had he done so, I would have documented those complaints as I did with his claims regarding his shoulder and pain to his ear. Everything I documented on the post use

of force examination accurately depicts what I
observed or what Carter complained of.

Ex. E (paragraph enumeration omitted) (Doc. 47, Ex. E, executed
Declaration).

In addition, Defendants present the Declaration of Long Ngoc
Do, the Director of Medical Services of the Office of Health
Service of the Florida Department of Corrections. He states that
the medical records reflect that during the medical examinations
post-use-of-force, Plaintiff did not allege he suffered a hearing
loss but instead alleged his left ear hurt. Ex. F at 1. Dr. Do
notes that medical staff examined Plaintiff and found an excessive
amount of earwax in his ear, and a red and inflamed ear canal. Id.
at 1-2. Further visual examination of the ear canal and ear drum
was deemed impossible due to the presence of ear wax. Id. Also,
Dr. Do noted that during the second medical examination, it was
concluded that Plaintiff only suffered an abrasion above his right
ear from the second incident of use-of-force. Id. at 2. Dr. Do
commented that medical staff noted a small amount of bleeding in
his left ear and staff concluded it was due to the first use-of-
force incident. Id.

Dr. Do states that Plaintiff complained of loss of hearing out
of his left ear on July 2, 2013, after the medical examinations of
January 30, 2013 and February 12, 2013. Id. On July 2, 2013, a
clinician examined Plaintiff, concluding that Plaintiff suffered
from Otitis media and externa (infection of the middle ear and the

outer ear). Id. Plaintiff had "moderate growth of Staphylococcus aureus[,]" which may include the complication of residual conductive hearing loss that may persist after the infection is resolved. Id. By September 10, 2013, the infection apparently resolved through the treatment of antibiotics. Id.

In an examination of Plaintiff's ear on April 17, 2014, his ear drum was found to be intact, with no bulging, draining or leaking out of his left ear drum. Id. Dr. Do expressed his opinion:

> [I]t is extremely unlikely that Carter lost the ability to hear out of his left ear as a result of the uses of force that occurred on December 31, 2012; it is also my professional opinion that his complaint of hearing deficit is more likely associated with complication of left ear infection as described above.

Id.

Attached to Dr. Do's Declaration are medical records which include a diagnosis of Otitis media and externa on July 2, 2013; in-patient notes from January 29, 2013 recording no medical complaints; a notation of a culture taken from the left ear on July 12, 2013; and culture results showing moderate growth staphylococcus aureus. Ex. F at 3-7.

Also submitted to the Court is the Declaration of Sergeant Victor Nieves. He states that a use of force occurred in the medical triage room of H-Dormitory on December 31, 2012. Ex. G (Doc. 47, Ex. G, executed Declaration). He notes that Plaintiff

was physically resistant, refusing to obey orders to stop resisting. <u>Id</u>. Sergeant Nieves states that he and Officer K. Polanco took Plaintiff to the ground, chest-down, and kept him there until Plaintiff complied with orders to stop resisting. <u>Id</u>. Neither officer punched or kicked Plaintiff. <u>Id</u>. He attests that "Captain Brannen, who was a Lieutenant at the time, was not present when the use of force occurred, but responded shortly thereafter when we called for the use of force camera according to procedure." <u>Id</u>.

The Emergency Room Record dated December 31, 2012, notes that Plaintiff complained of pain in his left ear, left shoulder, and left and right wrists and ankles. Ex. I. The left ear examination was hindered by excessive amounts of ear wax. <u>Id</u>. The nurse noted a red, inflamed ear canal, swelling to the right cheek, one hundred per cent range of motion of the jaw, and small superficial lacerations to the left and right ankles. <u>Id</u>. The nurse also recorded that Plaintiff was emotionally upset and visibly agitated during the examination. <u>Id</u>. On the supporting diagram, an additional notation is made "above eye." <u>Id</u>. The nurse noted no visible signs of injury to shoulder or wrist and her inability to visually examine the left ear due to wax buildup. <u>Id</u>. No treatment was rendered.

The next Emergency Room Record, after the second incident, states that Plaintiff complains of pain in the left ear. Ex. J.

The examiner noted that the only new injury is an abrasion above the right ear.  Id.  The examiner also found a small amount of bleeding to the left ear due to the prior incident.  Id.  In addition, the examiner saw redness on the back of Plaintiff's neck. Id.  This time treatment was provided by applying ointment to the inside of Plaintiff's left ear for a laceration.  Id.

In his deposition testimony, Plaintiff denied that he tried to kick Officer Miara.  Ex. H at 7 (Doc. 41).  Plaintiff attested that he told staff that he was beaten for no reason and he could not hear out of his ear.  Id. at 8.  Plaintiff agreed that the description of his injuries was accurate, except that it left out the injury to his finger, which took four to five months to heal. Id. at 11.

Plaintiff testified that he did not recall seeing Defendant Brannen after he arrived at the nurse's station.  Id. at 14. Plaintiff stated that after the camera was pulled, Defendant Brannen made a statement on camera and had "a nurse clear up the blood coming from my ear and having somebody clean up the blood off the floor."  Id. at 14-15.  Plaintiff further testified that the door to the nurse's station was open.[4]  Id. at 15.  He stated that

---

[4] The handheld video filed under seal, Defendants' Exhibit K, shows the door of the nurse's station in an open position at the inception of the video recording, with Plaintiff on the ground being attended to by two officers.

the door to the lieutenant's office was open when he walked past
shortly before the incident.  Id. at 16.

The exhibits also include the disciplinary report against
Plaintiff for battery/attempted battery, for which Plaintiff made
no plea and was found to be guilty and received sixty days of
disciplinary confinement.  Ex. L (Doc. 41).

## V.  Plaintiff's Response

Plaintiff provides a Sworn Affidavit in support of his
allegations.  (Doc. 53-1).  He attests that he told Nurse Bridges
that he could not hear anything but ringing in his left ear and his
jaw and back hurt.  Id. at 2.  Plaintiff states that, during the
second incident, he was beaten until his left eardrum ruptured and
blood erupted from his ear.  Id. at 3.  On January 23, 2013,
Plaintiff returned to the emergency room complaining of pain in his
left ear and right ring finger.  (Doc. 53-2 at 2).  The medical
records show that Plaintiff, on September 4, 2013, complained of an
inability to hear from his left ear and some sharp pain in his left
ear.  (Doc. 53-2 at 5).  Plaintiff also complained of a constant
headache, off and on, and the medication not working to relieve the
symptoms.  Id.  On January 24, 2013, Plaintiff received an x-ray of
his skull for "RO HEAD INJURY."  Id. at 7.  The results were normal
skull.  Id.

Although Plaintiff requested the P-Dormitory Sally Port
videotape to show that he did not attempt to kick anyone during the

first incident, the investigator found "there currently is no camera to view inside the sally port area." (Doc. 53-3 at 6).  Of note, the Declaration of Vincent Madison does not satisfy the requirements of 28 U.S.C. § 1746, as the Declaration is not dated. (Doc. 53-5).  Thus, it will not be considered by the Court.

## VI. Law and Conclusions

### A. Eighth Amendment

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII.  In considering an Eighth Amendment excessive force claim, [the Court] must consider both a subjective and objective component: (1) whether the 'officials act[ed] with a sufficiently culpable state of mind,' and (2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)), cert. denied, 133 S.Ct. 1822 (2013).

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the

> Whitley test in a Fourteenth Amendment
> excessive force case).  If force is used
> "maliciously and sadistically for the very
> purpose of causing harm," then it necessarily
> shocks the conscience.  See Brown v. Smith,
> 813 F.2d 1187, 1188 (11th Cir. 1987) (stating
> that the Eighth and Fourteenth Amendments give
> equivalent protections against excessive
> force).  If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

"Although the extent of the injury is a relevant factor in determining the amount of force applied, it is not solely determinative of an Eighth Amendment claim." Muhammad v. Sapp, 494 F. App'x 953, 957 (11th Cir. 2012) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)).

> When prison officials maliciously and
> sadistically use force to cause harm,
> contemporary standards of decency always are
> violated.  See Whitley, supra, 475 U.S., at
> 327, 106 S.Ct., at 1088.  This is true whether
> or not significant injury is evident.
> Otherwise, the Eighth Amendment would permit
> any physical punishment, no matter how
> diabolic or inhuman, inflicting less than some
> arbitrary quantity of injury.  Such a result
> would have been as unacceptable to the
> drafters of the Eighth Amendment as it is
> today.

Hudson, 503 U.S. at 9.

In this case, the parties have contradictory versions of what happened on December 31, 2012.  On one hand, Defendant Miara asserts that Plaintiff attempted to kick him and Defendant Miara reacted by placing Plaintiff on the ground, chest-first, and

holding him there.   On the other hand, Plaintiff asserts that Defendant Miara, without any legitimate penological purpose, pulled Plaintiff down to the floor, kicked him in the left side, and repeatedly punched him in the left side of his head and ear. Defendant Brannen, in his Declaration, states that the use-of-force in the second incident had ceased by the time he arrived at the triage room of H-Dormitory.   Ex. C.   He also states that he did not witness any use-of-force.   Id.   Plaintiff, on the other hand, in his verified Amended Complaint, states that Brannen watched the beating and failed to intervene.   Amended Complaint at 6. Plaintiff apparently contends that the incident inside the nurse's station was visible from Defendant Brannen's office.   See Ex. H at 14-16.

Plaintiff submitted a verified Amended Complaint, and both parties submitted affidavits and/or declarations and records to support their respective positions.   Accordingly, Defendants' Motion will be denied with respect to Plaintiff's Eighth Amendment claim of excessive use of force against Defendant Miara and failure to intervene against Defendant Brannen because there are genuine issues of material fact that prevent the entry of summary judgment at this stage of the proceeding.

## B.   42 U.S.C. § 1997e(e)

Defendants contend that Plaintiff has not suffered an injury sufficient to withstand 42 U.S.C. § 1997e(e) with respect to

Plaintiff's claim for compensatory or punitive damages. Defendants' Motion at 14-16. In Napier v. Preslicka, 314 F.3d 528, 531-32 (11th Cir. 2002), cert. denied, 540 U.S. 1112 (2004), the Eleventh Circuit addressed the requirements of 1997e(e):

> Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints. See Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000) (en banc) (surveying the legislative history of the PLRA). An action barred by § 1997e(e) is barred only during the imprisonment of the plaintiff; therefore, such action should be dismissed without prejudice by the district court, allowing the prisoner to bring his claim once released and, presumably, once the litigation cost-benefit balance is restored to normal. Id. at 980.

> Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody. In Harris, we decided that the phrase "Federal civil action" means all federal claims, including constitutional claims. 216 F.3d at 984-85.

The standard in an excessive use of force case is as follows:

> [O]ur core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and

17

> sadistically, we look to five factors: "(1)
> the extent of injury; (2) the need for
> application of force; (3) the relationship
> between that need and the amount of force
> used; (4) any efforts made to temper the
> severity of a forceful response; and (5) the
> extent of the threat to the safety of staff
> and inmates[, as reasonably perceived by the
> responsible officials on the basis of facts
> known to them]..." Campbell v. Sikes, 169 F.3d
> 1353, 1375 (11th Cir. 1999) (quotations
> omitted).[5] However, "[t]he Eighth Amendment's
> prohibition of cruel and unusual punishments
> necessarily excludes from constitutional
> recognition de minimis uses of physical force,
> provided that the use of force is not of a
> sort repugnant to the conscience of mankind."
> Hudson, 112 S.Ct. at 1000 (quotations
> omitted).

McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per

curiam).

     The record shows that Plaintiff suffered some injuries.[6]

Plaintiff's ear bled, he was treated for the injury to his ear, and

on January 24, 2013 he received an x-ray to rule out a skull

fracture/injury.  Also, it is certainly disputed matter as to what

actually caused the loss of hearing in Plaintiff's left ear.  Under

these circumstances, the Court is not inclined to bar Plaintiff's

---

     [5] See Whitley v. Albers, 475 U.S. 312, 321 (1986).

     [6] Plaintiff asserts that the nurse failed to document an
injury to his finger which took four to five months to heal,
according to his deposition.  Ex. H.  In his Affidavit, Plaintiff
states that he told Nurse Bridges that he could not hear anything
but ringing in his left ear and his jaw and back hurt.  (Doc. 53-
1).  Of note, the Emergency Room Record does not state that
Plaintiff complained of pain to his jaw, but it does show that the
nurse examined his jaw and found full range of motion.  Ex. I.

claim for compensatory damages or limit his recovery to nominal damages.[7]

Therefore, it is now

**ORDERED:**

1.   Defendants' Motion for Summary Judgment (Doc. 40) is **DENIED.**

2.   Defendants shall file their answer to the Amended Complaint by **June 15, 2015.**

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of May, 2015.

 

_____
BRIAN J. DAVIS
United States District Judge

 

sa 5/14
c:
Gerald James Carter
Counsel of Record

---

[7] The Court notes that Plaintiff does not seek punitive damages in his Amended Complaint.